MARY LEMAY, as Administratrix, etc., of JAMES LEMAY, Deceased, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Third Department, July 2, 1941.

*Thomas J. O'Connor* [*Eugene V. Coffey* of counsel], for the appellant.

*Mackrell & Ranney* [*John J. Mackrell* of counsel], for the respondent.

BLISS, J.   James LeMay died on June 29, 1939, almost instantly from injuries received as the result of a fall from the second story of a building.   This action is brought by his administratrix to recover the accidental death benefits under two life insurance policies issued upon his life by the defendant.   The company paid the face amounts of the two policies, less certain overdue premiums and other credits due it, but refused to pay the double accidental death benefits.

Both policies were issued on a weekly premium basis in 1932 when the insured was forty-two years of age.   One is a twenty-year endowment for the face amount of $370 and the other straight life with premium payments ceasing at age seventy-four for the face amount of $594.   Each policy contains the following provisions applicable to this controversy:

If any premium shall not be paid when due the policy shall lapse, subject to the provision for grace period and to the non-forfeiture privileges, and such lapse shall not be considered to have been waived by the company in any respect by reason of the acceptance of overdue premiums upon this or any other policy.

A grace period of four weeks for the payment of every premium except the first.

An accidental death benefit providing that upon receipt of proof of the accidental death of the insured while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy, the company will pay an accidental death benefit equal to the face amount of the insurance payable at death. This accidental death benefit is granted without specific extra premium being charged therefor, the cost being included in the premium for this policy.

Under non-forfeiture privileges, a free policy provision to the effect that after premiums on the policy have been fully paid for at least three years, then in case of default in the payment of any subsequent premium the company will, without action on the part of the holder, continue this policy as a non-participating free policy payable on the same conditions as this policy for a reduced amount without disability benefits.

A cash surrender provision.

The endowment policy had lapsed and·been revived at least once and the life policy had lapsed and been revived three times. At the time of death the weekly premiums due on each policy were in arrears for a period of five weeks and two days, or one week and two days beyond the grace period. After death the defendant credited to itself the amount of premium arrears on each policy and certain other liens thereon and paid the face amounts. The plaintiff claims that the defendant thereby waived any lapse or forfeiture and demands judgment for the accidental death benefits. The defendant says that it paid the face amounts under the terms of a so-called " concession " granted by the company on March 1, 1939, which, by its terms, specifically excluded accidental death benefits. It also sets up the provisions of the accidental death benefit indorsements to the effect that such benefits are payable only " while premiums are not in default beyond the grace period specified in this policy."

The Special Term was of opinion that at the time of death plaintiff's intestate was in default, that the policies had lapsed, that the defendant was not bound by the terms of the policies to pay anything and that the acceptance by the company of the overdue premium was not a waiver of default. It also held that the so-called " concession " of the defendant was not binding on the plaintiff and that there were no issues of any fact to be tried out. This concession above mentioned consisted of instructions to agents under date of March 1, 1939. We agree with the Special Term that the concession was not a part of the insurance contract. Nor do we need to determine whether the retention of the premium arrears by the company by deducting the same from the face amounts of the policies constituted a waiver. We believe that the questions here in issue must be resolved along other lines.

These policies were issued by a domestic life insurance company and are governed by the laws of our jurisdiction. At the time of their issue section 88 of the Insurance Law, as amended by chapter 291 of the laws of 1929, provided so far as here applicable: " If any policy of life insurance (other than a term policy for twenty years or less); issued on or after January first, nineteen hundred and seven, by any domestic life insurance corporation, after being in force three full years, shall by its terms lapse or become forfeited by the non-payment of any premium * * * the reserve on such, policy * * * together with the value of any dividend additions upon said policy, after deducting any indebtedness to the company, * * * shall upon demand not later than three months after the date of lapse with surrender of the policy be applied as a surrender value as agreed upon in the policy, provided

that if no other option expressed in the policy be availed of by the owner thereof, and if the policy itself does not direct what option shall become operative in default of selection by the owner, the same shall be applied to continue the insurance in force at its full amount including any outstanding dividend additions less any outstanding indebtedness on the policy * * * and provided further that any attempted waiver of the provisions of this paragraph in any application, policy or otherwise, shall be void."

This statute must be read into these policies and considered as part of their terms. They come within its provisions. By their terms they lapsed or became forfeited by the non-payment of premiums. Also they did not direct what option should become operative in default of selection by the owner; consequently under the statute the reserves thereon had to be applied to continue the insurance in force " *at its full amount.*" While the record does not show the amount of the reserve which had been built up under each policy, and the complaint might well be amended in this respect, in view of the cash surrender value tables contained in the policy, that such reserves were greatly in excess of the amounts necessary to continue the insurance in force at its full amount for the brief period of default. The company does not contend to the contrary. Our question then is whether the words " full amount " in the statute include the benefits payable upon the life of the insured in case of accidental death, as contended by the appellant, or mean only the face amounts of the policies, as contended by the respondent company. The policies recognize a distinction between the amount payable in case of accidental death and the face amounts of the policies. They say that in case of accidental death the company will pay a benefit " equal to the face amount of insurance then payable at death." Ordinarily the expression " full amount " would include all benefits under the policies. This includes the accidental death benefit. Anything less than that is not the full amount. Further proof of this interpretation of the statute is found in the fact that when the statute was amended to its present form (Insurance Law, § 208) the expression " full amount " is no longer used and the statute now specifically excludes any additional benefits on account of death by accident. Ordinary usage of the term " full amount " includes all amounts payable under the policy.

Each policy is one single contract of life insurance. It is not a policy of life insurance and also a policy of accident insurance. There is but one premium. The cost of the accidental death benefits is included in the single premium. It is granted without specific extra premium being charged therefor. Thus there was

but one contract of insurance upon the life of the deceased with one premium payable thereon. The reserve built up by the payment of this one premium during the early years of the policy when the cost of the protection afforded is less than the premium payments, for all that appears in the policy, was but one reserve covering all of the benefits provided in the policy. Such reserve covered the accidental death benefit. The cash surrender and free policy values do not divide the reserve in proportion to the benefits. The free policy privilege which is based upon the accumulated reserve includes the accidental death benefit. It says that the policy shall be continued " on the same conditions " and excludes therefrom only the disability benefits.

But we are told because the policy itself provides that the accidental death benefits shall be payable " while premiums are not in default beyond the grace period " this excludes the accidental death benefits from the full amount of the policy. A complete answer to that assertion is found in the statute itself which directs that the reserve shall be applied " to continue the insurance in force." This statute is for the benefit of the policyholder and to see that he receives the full benefit of the premiums paid prior to default. It also secures to the company the full amount of premiums called for by the policy. The statute automatically continues the policy at its full amount and upon the same terms and conditions as if the premiums were paid when due and there had been no delay in their payment for as long a period as the accumulated reserve will carry it. Such is its plain intent. Consequently there was no hiatus during which the insurance was not in force. At all times during the period of five weeks and two days the policy was in force and had not lapsed. At all times the company had in its hands moneys of the insured more than ample to pay these premiums and it was compelled by the statute to apply the same so as to continue the insurance in force at its full amount and thus keep it from lapsing. To hold that during these five weeks and two days there was a period when the policy was not in force at its full amount would defeat the very purpose of the statute.

Suppose these policies had contained a provision that the face amount should be payable only " while premiums are not in default beyond the grace period." No one could be heard to argue that the face amount was not now payable because of such default. The statute is designed to avoid just such a situation and makes void any attempted waiver of its provisions.

Thus, according to the terms of the policy itself, as supplemented by the statute, the plaintiff is entitled to the full amount of the policy which includes the death benefits.

The same question has been already passed upon in the case of *New York Life Insurance Co.* v. *Rositzky* (45 F. [2d] 758; certiorari denied, 283 U. S. 829). In that case a Missouri statute provided against non-forfeiture for non-payment of premiums and the application of the net value of the policy less certain deductions as a net single premium for temporary insurance " for the full amount written in the policy." The United States Circuit Court of Appeals, Eighth Circuit, held that the double indemnity in case of accidental death was life insurance, the same as the face amount of the policy, and not accident insurance, that there were not two contracts, one on life and the other for accident, but one contract, and that the " full amount " provision of the statute included the double indemnity in case of accidental death. The United States Supreme Court refused a review of this decision.

In *Flandina* v. *John Hancock Mutual Life Ins. Co.* (260 App. Div. 706) two industrial life insurance policies contained accidental death benefit provisions for the payment of amounts equal to the face amounts of the policies in case of accidental death " while there is no default in the payment of premium " and a non-forfeiture benefit of extended insurance " for its full amount." The Appellate Division, First Department, held that a clause eliminating double indemnity in the event of default in the payment of premiums did not limit the right to this benefit while the extended term insurance was in force following non-payment of premiums. It further held that the term " full amount " of insurance in the event the extended term provisions took effect included the accidental death double indemnity and required the payment of such double indemnity during the extended term.

The order and judgment should be reversed on the law and facts, with costs to the appellant, and the motion of defendant for summary judgment denied, with ten dollars costs.

CRAPSER, HEFFERNAN and FOSTER, JJ., concur; HILL, P. J., concurs in the result. Final decision should follow a trial of the issues which I believe exist.

Order and judgment reversed on the law and facts, with costs to appellant, and motion for summary judgment denied, with ten dollars costs.